UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TRACY MCLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:14-CV-00008-CAN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On January 3, 2014, Plaintiff, Tracy McLean ("McLean") filed her complaint in this Court. On May 29, 2014, McLean filed her opening brief requesting that this Court reverse and remand this matter to the Commissioner for further reconsideration, including a new hearing and decision, consistent with the principles outlined in her brief. On September 4, 2014, Defendant, Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), filed her response brief. McLean did not file a reply. The Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

I. **PROCEDURE**

On March 2, 2011, McLean filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") alleging a disability due to back pain and diabetes mellitus with peripheral neuropathy beginning May 27, 2010. Her claims were denied initially on May 31, 2011, and also upon reconsideration on July 12, 2011. McLean appeared at a hearing before an Administrative Law Judge ("ALJ") on August 28, 2012.

On September 11, 2012, the ALJ issued a decision holding that McLean was not disabled under section 1614(a)(3)(A) of the Social Security Act. The ALJ also found that McLean met the insured status requirements of the Social Security Act through June 30, 2011. In addition, the ALJ found that McLean had not engaged in substantial gainful activity since May 27, 2010, and that her status post bilateral carpal tunnel release, degenerative disc disease of the cervical spine, degenerative joint disease of the left shoulder, diabetes mellitus with peripheral neuropathy, and obesity constituted severe impairments. However, the ALJ found that McLean did not have an impairment of combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that McLean retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The ALJ found McLean could lift or carry and push or pull up to ten pounds frequently and twenty pounds occasionally; sit, stand, or walk for a total of about six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; crawl or kneel, and occasionally climb ramps, stairs, balance, stoop, and crouch. The ALJ further found that McLean could occasionally use foot controls with her lower extremities and she must avoid concentrated exposure to work hazards such as dangerous moving machinery and unprotected heights. The ALJ then found that McLean is capable of performing past relevant work in assembly and in packing.

On November 4, 2013, the Appeals Council denied review of the ALJ's decision making it the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981. On January 3, 2014, McLean filed a complaint in this Court seeking a review of the ALJ's decision.

## II. ANALYSIS

### A. Facts

McLean was a fifty-four year old female at the time the ALJ denied her claims. She has an eighth grade education and has obtained her GED. She reported past relevant work as a sewer, assembler, and packer.

#### 1. Claimant's Hearing Testimony

At the hearing, McLean testified that she suffered from back pain and diabetes mellitus with peripheral neuropathy. McLean testified that she experiences constant numbness and tingling in her extremities. She testified that since her onset date May 27, 2010, she endured blurred vision as a result of cataracts surgery, difficulty remembering things, back pain due to degenerative disc disease, diabetes with neuropathy, thyroid issues, and gout, all of which prevented her from working. McLean also indicated she was able to take care of her personal needs and drive to the store on occasion where she would use an electric cart. She testified that she attended church three times weekly and would occasionally go to dinner with her husband or friends.

McLean also testified that her typical day included performing minor household chores, watching television, and reading. She explained that her light household work included cooking easy meals, dishes, putting laundry in the dryer, dusting, and straightening up the home. McLean testified that pain, tingling in her hands and feet, and neuropathy prevented her from completing tasks such as vacuuming, mowing, and caring for her disabled grandchild when she visited. McLean testified that she could sit for approximately an hour, but found it necessary to prop her feet up due to swelling. McLean testified she could walk for approximately a few feet and stand

with the use of a cane for a short period. In addition, McLean believed she could lift a gallon of milk.

As to her treatment, McLean testified that she regularly experienced pain in her back and took prescription medication, including insulin shots, and muscle relaxers for her pain, diabetes, neuropathy, thyroid, cholesterol, and high blood pressure. She reported various side effects from her medications that included drowsiness, dizziness, lightheadedness, forgetfulness, dry mouth, diarrhea, and swelling in her legs and feet. McLean testified that even with her treatments and medications, her condition has worsened.

2. <u>Relevant Medical Evidence</u>

On January 20, 2010, McLean saw neurologist, Dr. Nasar Katariwala, who conducted an EMG/NCV for the evaluation of bilateral hand numbness and tingling. The results showed bilateral neuropathy in the upper extremities, more prevalent on her right side than her left. Dr. Katariwala noted that because McLean had more than a fifteen year history of insulin dependent diabetes mellitus, it was unclear whether the bilateral neuropathy was a result of the diabetes or whether it was related to carpal tunnel syndrome, indicated by prominent involvement of the median nerves. In February 2010, McLean underwent a right carpal tunnel release surgery by Dr. William Biehl, which provided complete relief in her right hand numbness. However, McLean's hand numbness returned one day prior to her follow up appointment with Dr. Katariwala on March 18, 2010. Dr. Katariwala reiterated the recurrence of McLean's hand numbness could be the result of either diabetes or carpal tunnel syndrome. In April 2010, Dr. Biehl performed a second carpal tunnel release surgery on McLean's left side. Dr. Biehl observed that McLean had a full range of motion the following month, but noted that McLean's sensation may not improve to normal despite the successful surgery because of her diabetes.

On October 14, 2010, McLean saw Dr. Thomas Ryan, D.O., for a new patient evaluation. During that visit, McLean presented complaints of upper back pain behind her left shoulder. McLean stated her pain level for that day was a zero out of ten, with ten being the worst level of pain. She stated that when she did experience pain, it was typically a ten out of ten. Dr. Ryan observed that McLean had tenderness, mild spasms, and a slightly reduced range of motion in her neck. Dr. Ryan noted that McLean had a decreased range of motion and pain with certain maneuvers in her left shoulder, but no specific weakness with rotator cuff testing. Dr. Ryan performed a left shoulder x-ray, which revealed some degenerative joint disease, but no significant abnormalities. Dr. Ryan diagnosed McLean with impingement syndrome of her left rotator cuff and a herniated disc in her cervical spine.

On April 11, 2011, McLean was examined by consulting physician, Dr. Ralph Inabnit who noted McLean's complaints of burning in her hands that she believed to be neuropathy. McLean also reported to Dr. Inabnit that she could lift a gallon of milk and had severe left shoulder and left scapular pain, which she rated at a nine out of ten. Dr. Inabnit stated that McLean's symptoms may be related to her previous carpal tunnel syndrome. In addition, McLean informed Dr. Inabnit that she had recently begun using a cane to assist with her unsteadiness. Dr. Inabnit observed that McLean had slightly reduced grip strength and a mildly reduced range of motion in her cervical spine. He further noted that McLean had no edema or significant weakness in her feet. During the exam, McLean could also heel-toe walk and walk without her cane. Furthermore, McLean's neurological exam was normal, including normal sensation and reflexes. Dr. Inabnit recommended that McLean undergo blood tests, attend a dietary consultation, and begin exercising for her diabetes. Dr. Inabnit further suggested that McLean obtain a left shoulder and left scapula x-ray and get a trigger point injection to possibly

relieve her left scapula pain. Dr. Inabnit did not opine as to any functional work limitations McLean might have, but did indicate that McLean's neuropathy symptoms were intermittent and related to her blood sugar control.

On May 17, 2011, state agency reviewing physician Dr. A. Dobson, completed a physical residual functional capacity assessment of McLean. Dr. Dobson reported no postural, manipulation, visual, communicative, or environmental limitations. Dr. Dobson further opined that McLean could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, stand or walk for a total of about six hours, and sit for a total of about six hours. Ultimately, Dr. Dobson noted that McLean's alleged symptoms were partially credible, but her contentions about the severity and the related functional restrictions were not supported.

On May 24, 2011, McLean's primary care physician, Dr. Vidya Kora, wrote a letter indicating he had advised McLean to use a cane due to her ataxia.[1] Dr. Kora attributed McLean's ataxia to her severe diabetic peripheral neuropathy and degenerative joint disease. On June 23, 2011, McLean met with Dr. Kora again and complained of severe pain in her neck and cervical and thoracic spine. McLean also complained of significant ataxia. Dr. Kora did not observe any edema in McLean's extremities and reported that a neurological evaluation had revealed no focal deficits. Dr. Kora instructed McLean to follow up with Dr. Hesham Bazaraa, an endocrinologist, and again advised McLean to use a cane due to her ataxia.

On September 6, 2011, McLean returned to Dr. Bazaraa for an evaluation of her diabetes. After reviewing McLean's symptoms, Dr. Bazaraa reported lower extremity edema, difficulty walking, and shortness of breath. Dr. Bazaraa's notes reflect McLean's complaints of numbness in her hands and feet, difficulty with balance, and her use of a cane. Dr. Bazaraa also noted

---

[1] Ataxia is "[a]n inability to coordinate muscle activity during voluntary movement"; incoordination. Stedman's Medical Dictionary (27th ed. 2000).

McLean's complaints of feeling "dopey" on medication. Doc. No. 12 at 522. He instructed her to follow up with her primary treating physician for her shortness of breath and ordered several blood and urine tests

On September 23, 2011, McLean saw Dr. Kora and presented complaints of persistent pain in the right thigh area. McLean also complained of diabetic peripheral neuropathy and occasional chest discomfort. Dr. Kora noted significant changes of diabetic peripheral neuropathy in the extremities, but no focal deficits were noted on a neurological examination. Dr. Kora adjusted McLean's insulin, referred her to Dr. Rosen for bariatric surgery, and referred her to Dr. Fletcher for a cardiac evaluation prior to surgery. Further, Dr. Kora referred McLean to Dr. Katariwala for the evaluation and management of her severe diabetic peripheral neuropathy.

One week later, on September 30, 2011, McLean saw Dr. Katariwala and complained of right lower and left upper extremity numbness. Dr. Katariwala noted that McLean had previously been diagnosed with neuropathy in both of her upper extremities. He also noted that McLean's lower extremities were not subject to the previous EMG testing, but that her current symptoms were similar to those that led to the previous neuropathy diagnosis. Dr. Kora reported his examination of McLean revealed subjective complaints and indicated that McLean had distal upper extremity numbness and tingling along with lower extremity numbness. McLean was given a sample of the prescription medication Lyrica and diagnosed with "likely diabetic polyneuropathy." Doc. No. 12 at 526.

On October 12, 2011, McLean saw Dr. Kindra Fletcher, Jr. for a cardiovascular evaluation prior to her bariatric surgery. Dr. Fletcher noted that McLean believed she would be able to completely come off insulin with the surgery. Dr. Fletcher reported mild obesity in the

abdomen and no edema in the extremities. Dr. Fletcher did not recommend McLean for bariatric surgery, but did suggest a "lifestyle change" with a low-sodium low-cholesterol, and low-triglyceride diet. Doc. No. 12 at 547.

On October 11, 2011, McLean saw Dr. Kora with complaints of pain in the right foot. Dr. Kora noted some redness and swelling in the medial aspect of McLean's great right toe. Dr. Kora reported no focal deficits in McLean's neurological examination. Dr. Kora requested that McLean see Dr. Biehl for an orthopedic evaluation of her foot and that she follow up in approximately one month.

On December 6, 2011, McLean saw Dr. Bazaraa with complaints of uncontrolled diabetes, gout, and uncontrolled blood pressure. McLean requested a cortisone injection. Dr. Bazaraa indicated McLean's physical examination was normal. Dr. Bazaraa adjusted her insulin and ordered laboratory tests. Three days later, on December 9, 2012, McLean saw Dr. Kora and presented complaints of pain in her left shoulder, left side of her chest, and left shoulder blade. Dr. Kora observed no edema in the extremities, but noted changes of diabetic peripheral neuropathy. Dr. Kora ordered a bone scan and scheduled a follow up appointment with McLean in one week.

On January 10, 2012, Dr. Kora completed a medical source statement of McLean's ability to do work-related activities. Dr. Kora found that McLean could occasionally lift or carry less than ten pounds, frequently lift or carry less than ten pounds, stand or walk at least two hours in an eight-hour workday, sit for less than six hours in an eight hour workday, and had unspecified limitations on her ability to push and pull with her upper and lower extremities. Dr. Kora noted "severe diabetic neuropathy, does not have feeling, and has ataxia, loses balance" as support for his conclusions. Doc. No. 12 at 528. Further, Dr. Kora found that McLean could

8

never perform postural activities and could only occasionally perform reaching, handling, fingering, and feeling. Dr. Kora also checked the "limited" category for all environmental limitations to show that McLean's impairments limited her tolerance of the seven listed environmental factors. Doc. No. 12 at 532. Dr. Kora cited "severe diabetic neuropathy" as support for his conclusion. *Id.*

    B.    <u>Standard of Review</u>

In reviewing disability decisions of the Commissioner, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and free of legal error. *See* 42 U.S.C. 405(g) (2006); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is more than a mere scintilla of relevant evidence that a reasonable mind might accept to support such a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence supports the Commissioner's final decision, a Court reviews the whole record including evidence that detracts from the Commissioner's findings in the decision. *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477-88 (1951). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (*quoting Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). An ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

To be entitled to supplemental security income under 42 U.S.C. § 1381a, McLean must establish that she is disabled. *See* 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairment meets or equals any impairment listed in the regulations and therefore is deemed so severe as to preclude substantial gainful activity; (4) the claimant is able to perform her past relevant work given her RFC; and (5) the claimant can adjust to other work in light of her RFC. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v);[2] *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. § 404.1520(a)(4). An affirmative answer at either step three or step five establishes a finding of disability. *Briscoe*, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the Commissioner acknowledges the impairment and finds the claimant to be disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. App. 1, Subpart P, § 404. However, if the impairment is not listed, the ALJ assess the claimant's RFC, which is then used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R.

---

[2] Due to the identical thrust of the regulations covering DIB and SSI, the Court will simply refer to 20 C.F.R. § 404 in the future.

404.1520(e)-(g). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. *Young*, 362 F.3d at 1000.

C. Issues for Review

In this case, McLean raises three issues that the Court must resolve. First, the Court must determine whether the ALJ's RFC determination is supported by substantial evidence. Specifically, McLean argues the ALJ erred in according little weight to the January 2012 opinion of her treating physician, Dr. Vidya Kora. Second, the Court must ascertain whether the ALJ's credibility assessment is supported by substantial evidence. Third, the Court must consider whether the ALJ erred in his Step Five determination.

1. The ALJ properly weighed Dr. Kora's medical opinion evidence in assessing McLean's RFC.

An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p 1996. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1521(c). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work-related

11

activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

McLean seeks a remand for further consideration of the medical opinion of her treating physician, Dr. Vidya Kora. She contends the ALJ improperly evaluated the opinion of Dr. Kora and erred by assigning little weight to his opinion. She also alleges the ALJ erred in finding Dr. Kora's opinion inconsistent with the record.

In determining the proper weight to accord medical opinions, the ALJ must consider factors including the claimant's examining and treatment relationship with the source of the opinion; the physician's specialty; the support provided for the medical opinion; and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(1)-(6); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). A "treating source" is a medical professional who provides medical treatment or evaluation to the claimant and has or had an ongoing relationship with the claimant. 20 C.F.R. § 404.1502. An ongoing relationship exists when the medical record shows that the claimant saw the source frequently enough to be consistent with accepted medical practices for the treatment of the medical condition. *Id*.

An ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); SSR 96-8p; SSR 96-2p. Generally, ALJs weigh the opinions of a treating source more heavily because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. *Dixon v. Massanari*, 270 F.3d 1171, 1177

(7th Cir. 2001). A medical opinion may be discounted if it is internally inconsistent or inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d at 870. While the ALJ is not required to award a treating physician controlling weight, the ALJ must articulate, at a minimum, his reasoning for not doing so. *Hofslien*, 439 F.3d at 376-77; *see* 20 C.F.R. § 416.927(c)(2). Although the ALJ is required to consider and discuss a treating physician's opinion, the ALJ is not bound by conclusory statements of doctors or medical opinions that are unsupported or inconsistent with substantial evidence in the record. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's reasoning should be based on the relevant factors applied to all medical opinions as stated above. *See* 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, the ALJ accorded little weight to Dr. Kora's opinion because he found inconsistencies between Dr. Kora's assessment of McLean's ability to do work-related activities and the report of the medical consultative examiner, Dr. Inabnit, who opined McLean's "symptoms related to neuropathy were likely intermittent." Doc. No. 17 at 7. McLean argues that the ALJ's conclusion was based on an improper evaluation of Dr. Kora's January 2012 medical source statement ("Kora's 2012 Opinion"), which indicated that McLean could lift less than ten pounds, frequently and occasionally; stand or walk for at least two hours in an eight-hour workday; sit for less than six hours in an eight-hour workday; and was limited in her abilities to push or pull with both upper and lower extremities. McLean supports her contention by citing several instances throughout the record where McLean had reported problems related to her diabetic neuropathy. McLean's arguments are misplaced.

First, the ALJ articulated that Dr. Kora was McLean's treating physician. Doc. No. 12 at 29. Second, the ALJ reviewed and discussed the treatment notes of several doctors, including Dr. Kora and the consultative medical examiner, Dr. Inabnit, in considering whether Dr. Kora's

13

opinion was entitled to controlling weight. As seen in his decision, the ALJ considered Dr. Kora's 2012 Opinion describing limitations on McLean's ability to do work-related activities, as described above. The ALJ also cited to Dr. Kora's opinion that McLean was limited in her use of her upper and lower extremities, was unable to engage in any posturals, and could only occasionally reach, handle, finger, and feel. In giving this opinion little weight, the ALJ noted Dr. Kora's inconsistency with the evidence of record. The ALJ referenced the treatment notes of Drs. Inabnit, Katariwala, and Bazaraa, which failed to place similar limitations on McLean.

McLean contends that Dr. Kora's 2012 Opinion was impermissibly discounted. Specifically, McLean argues that the ALJ incorrectly gave great weight to the consultative medical examiner, Dr. Inabnit, and incorrectly found McLean's neurological examinations to be generally normal. McLean asserts that because Dr. Kora was her treating physician and treated McLean on a regular basis as compared to McLean's single visit to Dr. Inabnit, his opinion should be given more weight. "Greater weight is assigned the more times the treating source has examined the claimant and the more knowledge the treating source has regarding the claimant's conditions." *Harder v. Astrue*, No. 2:11-cv-00370, 2013 U.S. Dist. LEXIS 4981 at *45 (N.D. Ind. Jan. 11, 2013). A one-time examination should be afforded less weight when it is contradictory to the other evidence of record. *Criner v. Barnhart*, 208 F. Supp. 2d, 937, 955 (N.D. Ill. 2002).

In discounting the opinion of Dr. Kora, the ALJ articulated inconsistencies between the opinion of Dr. Kora and the record. In doing so, the ALJ highlighted Dr. Inabnit's opinion which stated that McLean's direct strength testing revealed no significant weakness in her foot, no edema, normal sensation, normal tandem heel-toe walk, and the ability to ambulate without a cane. The ALJ then noted that Dr. Inabnit did not identify any functional work limitations

14

McLean might have. Further, the ALJ considered the opinion of McLean's treating neurologist, Dr. Katariwala, who did not place any limitations on McLean's functioning. In addition, the ALJ considered the opinion of Dr. Bazaraa, McLean's endocrinologist, who also did not place any functional limitations on McLean. Therefore, the ALJ's reference to the conflicting opinions of Drs. Kora, Inabnit, Katariwala, and Bazaraa support his determination that Dr. Kora is entitled to little weight. Even so, after giving great weight to the opinion of Dr. Inabnit, the ALJ considered other evidence in the record including McLean's diagnostic testing, some of her positive physical examination findings, her treatment with some specialists, her regular treatment with Dr. Kora, and her complaints of medication side effects. Based on all the evidence, the ALJ found it more appropriate to limit McLean to less than the full range of light work. Doc. No. 12 at 10. In reaching this conclusion the ALJ did not ignore Dr. Kora's opinion. Moreover, he articulated his rationale for the weight he gave to Kora's opinion.

Nevertheless, McLean's argument does not stop there. She also argues the ALJ incorrectly found McLean's neurological examinations were generally normal. McLean challenges the ALJ's determination that her neurological examinations were normal by pointing to several instances in the record where McLean's physicians opined differently. Specifically, McLean references the March 18, 2010, opinion of Dr. Katariwala, which noted it was unclear whether McLean's condition was solely related to carpal tunnel syndrome or if underlying neuropathy had remitted before returning. McLean further highlights the May 3, 2010, opinion of Dr. Biehl, which stated McLean had slight decreased sensation in her median nerve distribution that he felt was consistent with McLean having diabetic neuropathy. McLean also references the September 30, 2011, treatment notes of Dr. Katariwala, who reported that McLean had previously been diagnosed with bilateral upper extremity neuropathy and that her current

15

symptoms related to her lower extremities were similar to those she exhibited when her upper extremities were tested. McLean also noted the December 9, 2011, opinion of Dr. Kora reporting changes of diabetic neuropathy. While McLean contends the ALJ erred in his determination that McLean presented generally normal neurological examinations, the ALJ's decision highlights evidence in the record suggesting otherwise.

In support of his conclusion that McLean had generally normal neurological examinations, the ALJ highlighted the opinions of Dr. Kora and Dr. Inabnit. The ALJ references several of Dr. Kora's treatment notes including those dated December 15, 2010, June 23, 2011, September 23, 2011, and October, 11, 2011, which all stated that no focal deficits were noted on neurological exam. The ALJ then highlighted the April 11, 2011, opinion of Dr. Inabnit, which stated that McLean's neurological exam revealed no focal deficits and no evidence of trauma, defects, or tenderness. The ALJ also noted several instances in the record where McLean's treating physicians opined normal neurological exams. As such, the ALJ supported his conclusion that McLean's neurological examinations were generally normal with substantial evidence.

Thus, having discussed inconsistencies between Dr. Kora's findings on his medical source statement of McLean's ability to do work-related activities and reviewing the opinions of three other physicians, all of whom failed to find similar limitations on McLean, the ALJ met his burden to explain why Dr. Kora's opinion was entitled to little weight. In addition, the ALJ supported his determination that McLean generally had normal neurological examinations by reviewing the treatment notes of several doctors. Therefore, the ALJ's RFC determination is supported with substantial evidence and need not be disturbed.

2. <u>The ALJ's credibility determination is supported by substantial evidence.</u>

McLean's second argument challenges the ALJ's credibility assessment. Specifically, McLean contends the ALJ failed to support his credibility assessment with substantial evidence because the ALJ erred in considering the required factors. Once an ALJ has found an underlying medically determinable impairment that could reasonably be expected to produce a claimant's pain and other symptoms, he is required to evaluate the intensity and persistence of the symptoms. *See* 20 C.F.R. § 404.1529(c). "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhardt*, 390 F.3d 500, 505 (7th Cir. 2004).

McLean argues the ALJ erred in his credibility assessment for four reasons. First, McLean contends that the ALJ's discussion and consideration of McLean's symptoms of pain and numbness were incorrectly accounted for in the RFC determination because Dr. Kora's opinion suggests McLean's work-related limitations exceed those reflected in the RFC. Second, McLean challenges the ALJ's finding that McLean's lack of edema justified the decision to omit any restriction requiring her to elevate her feet while in a seated position. Third, McLean argues that the ALJ relied too heavily on McLean's reported zero out of ten pain level because she only reported no pain once. Fourth, McLean disagree with the ALJ's decision to exclude a restriction in the RFC relating to McLean's alleged need to use a cane when ambulating based on Dr. Kora's opinion to the contrary. Despite McLean's arguments, the Court finds that the ALJ's credibility determination was not patently wrong and therefore is supported by substantial evidence.

In his decision, the ALJ discussed a variety of factors in making his credibility determination. Specifically, the ALJ reviewed McLean's subjective statements, her various medical treatments and physician's notes, as well as statements made by her family members as to the nature and intensity of her pain. On review of McLean's subjective statements, the ALJ discussed her reports of pain, numbness, tingling, swelling, loss of balance, and need for a cane. The ALJ acknowledged McLean's complaints and took each into consideration when articulating his RFC determination. For example, the ALJ acknowledged McLean's complaints of lower extremity numbness and tingling by limiting her to only occasional use of foot controls with her lower extremities. Doc. No. 12 at 26. As already discussed, the ALJ also considered McLean's reported need to elevate her legs even though he ultimately discounted her complaints of leg swelling by citing to several instances in the record where McLean exhibited no edema.

Further, the ALJ cited to multiple instances where McLean reported pain at the zero out of ten level. For instance, the ALJ noted McLean reported a pain level of zero during a visit with her endocrinologist, Dr. Bazaraa. The ALJ also discussed McLean's October 2010 visit with an orthopedic surgeon where she also rated her pain as a zero out of ten. Moreover, the ALJ noted McLean's report of pain at the nine out of ten level at her April 2011 visit to Dr. Inabnit. Thus, McLean is mistaken in her contention that the ALJ relied on a single report of a zero pain level. The ALJ's decision shows more than one such instance and also demonstrates consideration of multiple pain complaints above the zero level.

Finally, McLean argues the ALJ erred in considering her need for a cane. In support, McLean contends that the record shows she used the cane on several occasions. However, the ALJ articulated multiple reasons for discounting McLean's assertion that she required a cane for ambulating. For example, the ALJ found that in spite of Dr. Kora's opinion advising McLean to

18

use a cane due to ataxia, evidence showing any signs of ataxia was lacking. The ALJ also noted that no other medical professional had opined McLean needed a cane to ambulate. Despite McLean's allegations, the ALJ supported his credibility determination with substantial evidence and therefore, it is not patently wrong. As a result, the ALJ's RFC determination is affirmed.

### 3. Substantial evidence supports the ALJ's Step Five finding.

McLean's final argument challenges the ALJ's Step Five finding, claiming it was not supported by substantial evidence because the ALJ erred in relying on vocational testimony elicited in response to an incomplete hypothetical question. In support, McLean argues the ALJ's errors in evaluating the opinion of Dr. Kora, evaluating McLean's credibility, and formulating the RFC render the hypothetical questions posed to the vocational expert witness incomplete.

At Step Five of the sequential evaluation process, the ALJ must determine whether the claimant is able to do any work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). A VE or specialist may offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work. 20 C.F.R. § 404.1560(b)(2). The hypothetical question an ALJ poses to a VE need only set forth the claimant's limitations and abilities to the extent they are supported by the record evidence. *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). Where the hypothetical does not include all of the applicant's limitations, there must be some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations. *Young v. Barnhart*, 362 F.3d 99, 1003 (7th Cir. 2004) (citing *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

In this case, the ALJ posed a hypothetical question that reflected the RFC that has already been affirmed by this Court in the analysis above. The hypothetical included the limitations the

ALJ found to be fully credible based on the record and was based on the ALJ's proper articulation of Dr. Kora's opinion as discussed above. Therefore, the hypothetical question was proper and the ALJ's Step Five determination is supported by substantial evidence. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).

### III.  CONCLUSION

For the foregoing reasons, the ALJ's determination that McLean is not disabled for purposes of SSI and DIB is supported by substantial evidence. Therefore, McLean's motion to reverse and remand is **DENIED**. [Doc. No. 17]. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 6th Day of November, 2014.

s/Christopher A. Nuectherlein
Christopher A. Nuechterlein
United States Magistrate Judge